1    ERIC A. NYBERG, ESQ. (Bar No. 131105)
     SARAH L. LITTLE, ESQ. (Bar No. 215635)
2    **KORNFIELD, NYBERG, BENDES, KUHNER & LITTLE, P.C.**
     1970 Broadway, Suite 600
3    Oakland, California  94612
     Telephone:  (510) 763-1000
4    Facsimile:  (510) 273-8669
     Email: e.nyberg@kornfieldlaw.com
5    Email: s.little@kornfieldlaw.com

6    Attorneys for Defendant Tony Fu

7

8                     UNITED STATES BANKRUPTCY COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   In re                                    Case No. 17-41205 CN

12   Tony Dong Xing Fu,                        Chapter 7

13
                                  Debtor.
14   _____          Adv. Proc. No. 17-04056

15   Demas Wai Yan, Thai Ming Chiu, Legal
     Recovery, LLC,

16                               Plaintiffs,   **POST-TRIAL BRIEF OF
                                               DEFENDANT TONY FU**
17   vs.

18

19   Tony Fu,

20                               Defendant.
     _____          Trial Dates: January 8, 9, 29, 2019
21                                              Time:  9:00 a.m.
                                                Ctrm:  215
22                                                      U.S. Bankruptcy Court
                                                        1300 Clay Street
23                                                      Oakland, CA 94612

24

25

26

27

28

# I. INTRODUCTION

A trial was conducted in this adversary proceeding on January 8, 9 and 29, 2019. The Plaintiff in the adversary proceeding is Demas Yan ("Yan"). Yan, who is a vexatious litigant and disbarred lawyer, asserted one claim for relief in the First Amended Complaint, which is the operative pleading for purposes of the trial. Yan's sole claim was asserted pursuant to 11 U.S.C. § 523(a)(6). Yan's 523(a)(6) claim arose out of an alleged assault, which Yan contends occurred on April 25, 2016. Yan alleges that he was assaulted and battered by Defendant Tony Fu ("Fu"). The only evidence submitted in support of Yan's claim was the testimony of Yan, a man with a previously established credibility problem. Yan failed to provide any documentary evidence regarding his damages or any oral testimony, other than his own testimony, of the nature and extent of any injuries he allegedly suffered. Fu provided testimony from three (3) witnesses to support his defense that he did not assault Yan. In addition, there was evidence from a 911 call which corroborated the testimony of defense witness Martin Eng that Yan was attached by two (2) young latino or hispanic youths. Given Yan's history of harassment of Fu, and his significant legal disciplinary record that demonstrates his lack of credibility coupled with testimony of the defense witnesses and the third-party 911 caller, the court should enter judgment in favor of Fu and against Yan.

# II. SUMMARY OF RELEVANT EVIDENCE

A. <u>Documentary Evidence</u>.

Several documents establish that Yan is not credible or ethical, and has a history of misleading courts.

Defendant's Exhibit A, which is a Final Order of the United States Court of Appeals for the Ninth Circuit, establishes that Yan was not credible [Exhibit A, Page 4], that Yan submitted a false answer on his Application for Admission to the Ninth Circuit [Exhibit A, Page 5], that Yan's membership in the Ninth Circuit should be rescinded because of his submission of a false application [Exhibit, Page 6], and that Yan threatened Martin Eng's life [Exhibit A, Page 7].

Defendant's Exhibit B establishes, among other things, that the California State Bar Court found that there was clear and convincing evidence determined by the Ninth Circuit that warranted

Post-Trial Brief

KORNFIELD | NYBERG, BENDES, KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600   Oakland, California 94612

the imposition of discipline in California for filing a false application to the Ninth Circuit, seeking to mislead a judge, threatening Martin Eng's life, filing multiple, frivolous appeals, and failing to comply with court rules and orders and by engaging in the unauthorized practice of law in the Ninth Circuit [Exhibit B, Pages 42 and 43].

Defendant's Exhibit C establishes that based upon the findings of the California State Bar Court [Exhibit B], the California Supreme Court entered an Order Disbarring Demas Yan from practice of law in the State of California.

Plaintiff's Exhibit 10 establishes a written alibi statement of Bryant Fu which is uncontroverted by any other evidence that was submitted at trial.

Defendant's Exhibit W is an audio transcript and the written Event History Detail associated with the audio transcript of a 911 call that was made immediately after the time of the alleged assault on Yan. The audio transcript establishes that the 911 caller witnessed two (2) Latino or Hispanic juveniles attack a 50 to 60 year old male Asian on 7th Avenue in San Francisco, California. The Event History Detail shows that the third party 911 call was made at 8:36 p.m., which was prior to Yan's 911 call, which was made at 8:38 p.m.

B.     Testimony of Witnesses.

   i.     Demas Yan.

Yan was the only witness to provide testimony in support of Yan's claim. Yan testified that on the evening of April 25, 2016, he and his family had dinner later than usual. Yan testified that the next day was garbage day, and that after dinner he took out the remaining garbage and went down to the street, 7th Avenue, where the garbage cans were located. Yan testified that while he was organizing the garbage and recycling, Martin Eng showed up and a discussion in Cantonese ensued between the two of them regarding the judgment that Yan had obtained against Martin Eng. Yan testified that he told Eng to go away otherwise he would call the police. Yan testified that the next thing that happened was he was struck in the back of the head and then struck several times on his forehead and left forearm and hand by what appeared to be either a hammer or crowbar which was wrapped in some sort of cloth. Yan testified that he was struck by Tony Fu. Yan testified that Fu and Eng then ran to a nearby parked car and fled the scene. Yan

testified that he then went back in the house, his sister then called 911, and he also called the police. He testified that he then went and sat out on his front porch, waiting for the ambulance and police. Yan testified he was taken to San Francisco General Hospital and spent the night at the hospital. Yan provided no testimony regarding the names of any treating physicians at the hospital, the names of any doctors who treated him after the date he was taken to the hospital, and provided no documentary evidence to support his testimony that he was taken to the hospital by an ambulance and treated. Yan did not provide any documentary evidence to support his assertions that he was subsequently treated by any doctors for the alleged injuries that he suffered. Yan, in his testimony, acknowledged that there was a 911 call placed shortly after the incident by two (2) individuals who were driving by at the time of and witnessed the alleged incident. Yan identified the caller as Thomas Tucker and stated in his testimony that he had spoken to Mr. Tucker about the event, but said that he did not hear the 911 audio. Yan testified that he tried to obtain the audio during discovery, but then admitted that he did not subpoena the recording.

ii.    Tony Fu.

Fu testified regarding the long history of harassment by Yan and the multiple lawsuits Yan brought against him, his ex-wife, Crystal Lei, and their son Bryant Fu. Fu testified as to having been threatened by Yan and as to threats made by Yan against his family. Mr. Fu testified that on April 25, 2016, he had a conversation with Martin Eng at the San Francisco County Superior Court. Mr. Fu indicated that Eng told him that Demas Yan had asked Martin Eng to come by his house that night to discuss settlement of the judgment that Yan had against Martin Eng, and that Yan wanted Mr. Eng to bring Fu with him to the meeting. Mr. Fu testified that Martin Eng informed him that he would come by Fu's house that evening around 7:30 p.m.

Mr. Fu testified that after leaving the court on April 25, 2016, he returned to property located at 337 28th Avenue. Fu testified that he may have left the house for a brief period around 5:00 p.m. but then returned to the property. Fu testified he did leave the property again on the evening of April 25, 2016 for a brief period of no more than 10 minutes. During this time period, he met with Martin Eng in Mr. Eng's car on California Street, where it intersects with 28th Avenue. Fu testified that Mr. Eng asked him to come with him to Yan's house because Yan

KORNFIELD | NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600  Oakland, California 94612

wanted to talk about settlement. Fu testified that he told Eng that he did not want to go with Eng and their discussion ended. Mr. Fu got out of the car and returned to the property at 337 28th Avenue and remained there for the rest of the night. Fu testified this discussion with Eng lasted less than 5 minutes and that he was gone from the house not more than 10 minutes.

Fu testified that with the exception of the 2 brief times that he was out of the house at 337 28th Avenue on April 25, 2016, he was home and preparing for a hearing in the San Francisco County Superior Court, which was scheduled for hearing the next morning on April 26, 2016. Mr. Fu testified that Crystal Lei was also home that evening, but was in bed not feeling well. Mr. Fu testified his son, Bryant Fu, was home all evening and was sitting in the dining room all evening working on a politics assignment.

Mr. Fu testified that he has been to the home of Demas Yan on 7th Avenue prior to the evening of April 25, 2016. Mr. Fu testified that it takes approximately 20 to 30 minutes to get from 337 28th Avenue to Mr. Yan's home on 7th Avenue by car. Mr. Fu testified that he did not go to Demas Yan's home or any place close to it on the evening of April 25, 2016. Mr. Fu testified that he did not assault Mr. Yan on April 25, 2016 or at any other time. Mr. Fu testified that he has never struck Mr. Yan with any object at any time. Mr. Fu testified that he voluntarily turned himself in to the San Francisco Police Department on August 1, 2016. Mr. Fu testified that ultimately the district attorney dismissed all charges against him and he was not prosecuted.

iii. Bryant Fu.

Bryant Fu testified that he was at the home located at 337 28th Avenue the entire day on April 25, 2016. Bryant Fu identified and authenticated Plaintiff's Exhibit 10, which is an alibi statement. Bryant Fu testified that he was asked by both the public defender and Tony Brass, his father's criminal defense attorney, to prepare the statement. Bryant Fu testified that he had informed both Tony Brass and the public defender of his recollection of the events of the evening of April 25, 2016, but was not asked to formalize them in writing until the time that he prepared Exhibit 10.

Bryant Fu testified, consistent with Exhibit 10, that on the evening of April 25, 2016, he was at home in the dining room located at 337 28th Avenue working on a final paper for an

KORNFIELD | NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600 Oakland, California 94612

KORNFIELD | NYBERG, BENDES, KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600    Oakland, California 94612

international politics class that he took at U.C. Santa Cruz. Bryant Fu testified that he was aware of his father's presence that evening because Mr. Fu was working on preparing for a hearing scheduled for the next day in San Francisco County Superior Court and was in the room above the dining room. Bryant Fu testified he could hear his father moving around. Bryant Fu also testified that based upon the layout of the house, that for anyone to enter or exit, they would have to enter or leave through the front door which he could partially see with the exception of a slight blockage due to a pillar. Bryant Fu testified that the longest period of time that he was not aware of his father being in the house on the evening of April 25, 2016 was 10 minutes. Bryant Fu also testified that he was born and raised in San Francisco and has lived in San Francisco all of his life. Bryant Fu testified that he is familiar with the City of San Francisco and testified that it would take approximately 20 minutes to get from 337 28th Avenue to Demas Yan's house by car.

    iv.    Martin Eng.

Mr. Eng testified that he has known Demas Yan for a number of years. Mr. Eng testified that Demas Yan, when he was licensed to practice law, represented Mr. Eng in various lawsuits. Mr. Eng testified that Demas Yan filed some lawsuits against him while he was still a client and got a judgment against him for approximately $1.75 million dollars.

Mr. Eng testified that he had a conversation on April 25, 2016 with Mr. Yan at the San Francisco County Superior Court. Mr. Eng testified that Mr. Yan told him he was willing to make a deal with him regarding the judgment he had against Mr. Eng and asked Mr. Eng to come to his house around 8:00 p.m. that evening. Mr. Yan also asked Mr. Eng to bring Tony Fu with him. Mr. Eng testified that he spoke with Tony Fu at the court the same day and told him that he would come by Tony's house around 7:30 p.m. that night. Mr. Eng testified that around 7:30 p.m., he drove to the house on 337 28th Avenue. Mr. Eng testified he saw Tony Fu on the street at the corner of 28th and California. He said Fu got into his car and they talked. Mr. Eng told Tony that Demas Yan wanted Mr. Eng and Tony to come to his house to discuss a resolution of the judgment against Mr. Eng. Mr. Eng testified that Tony Fu did not agree to go to Mr. Yan's house with Mr. Eng. Mr. Eng testified that his conversation with Tony lasted no more than a few minutes. Mr. Eng testified that Tony left his car and he drove alone to Mr. Yan's house on the

night of April 25, 2016. Mr. Eng testified that he drove from Tony Fu's house to Mr. Yan's house on 7th Avenue and that it took approximately 30 minutes to drive to Mr. Yan's house. Mr. Eng testified that when he arrived at Mr. Yan's house, Mr. Yan was out front, apparently taking care of the garbage. The two of them had a discussion wherein Mr. Yan told Mr. Eng that he had a deal of a lifetime for him and that he would not collect the judgment from Mr. Eng if Mr. Eng agreed to help Mr. Yan frame Tony Fu. Mr. Eng testified that he indicated he was not interested in helping. Mr. Eng testified that Mr. Yan told him that he had no choice because if he didn't help, he would go to jail along with Fu. Mr. Eng testified he asked Demas Yan how he intended to frame Tony Fu, and Mr. Yan told him that he bribed a San Francisco police officer. Mr. Eng still refused to assist Mr. Yan. Mr. Eng testified that suddenly two (2) young boys arrived on the scene and one of them struck Mr. Yan in the face. Mr. Eng testified that the boys appeared to be teenagers and appeared to be latino or hispanic. Mr. Eng testified that after the boys started attacking Mr. Yan, he ran to his car and left the scene without calling the police or assisting Mr. Yan.

Mr. Eng testified that Tony Fu was not at the scene of the attack on April 25, 2016 and was not one of the individuals who assaulted Mr. Yan on that evening. On cross examination, Mr. Yan asked Mr. Eng whether he was interviewed by the FBI. Mr. Eng testified he had spoken to them several years ago. He further stated that he had informed the FBI that Mr. Yan had told him that Yan had gone to China and paid $40,000 to hire a hitman to kill Tony Fu. Mr. Eng testified that Mr. Yan had threatened to kill Tony Fu on at least one occasion and had threatened to kill him as well.

v.    Third Party Eyewitness 911 Caller

The 911 audio recording contained testimony of a third party who witnessed Yan being attacked. Yan's testimony established that a Mr. Thomas Tucker was the third-party witness who saw Yan being attacked while Tucker was a passenger in a car driving by while the attack happened..

In the 911 audio, Mr. Tucker states "these two young people just punched this Asian guy in the face and then ran off. They mugged him and they ran down 7th Avenue toward forest hill

KORNFIELD | NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600  Oakland, California 94612

station" Tucker stated the assailants were "juveniles." The operator asked, "if you had to guess their age how old would you say?" Tucker answered, "16 or 17." Tucker identified the victim as being an Asian male, aged 50 to 60. Tucker further stated the assailants ran off south toward Forest Hill Station.

## III.    ARGUMENT

### A.    Yan's Claim Under 11 U.S.C. § 523(a)(6)

Yan asserts that he has a claim against Tony Fu that should be determined to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). A creditor must prove that a debt is non-dischargeable by preponderance of the evidence. *Grogan vs. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The exceptions to discharge should be strictly construed in favor of dischargeability. *In re Hudson,* 107 F.3d 355 (5th Cir. 1997).

Section 523(a)(6) of the Bankruptcy Code provides:

> "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

The United States Supreme Court in *Kawaauhau vs. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), held that 11 U.S.C. § 523(a)(6) only covers acts done with actual intent to cause injury. Negligence or recklessness is insufficient to support a non-dischargeable claim under 11 U.S.C. § 523(a)(6).

Yan has not established any element of his case, let alone by a preponderance of the evidence. The only evidence supporting Yan's claim is his own testimony, testimony that has been refuted by four (4) witnesses and documentary evidence. Further, Yan is not a credible witness. Yan was impeached by his own testimony with regard to issues relating to his alleged damages. Further, Yan's testimony, as well as the documentary evidence, Defendant's Exhibits A, B & C, establish that Yan is not to be trusted. Yan was disbarred by both the Ninth Circuit Court of Appeals and the California Supreme Court for numerous violations of moral turpitude,

KORNFIELD | NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600   Oakland, California 94612

Post-Trial Brief

-8-

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600  Oakland, California 94612

1  including violations for attempting to mislead a judge.  Yan's M.O. hasn't changed, that is the

2  very thing that Yan has attempted to do in this case.

3  Yan has, through a fabricated story, attempted to mislead this court into believing he was

4  attacked on the evening of April 25, 2016 by Tony Fu.  The overwhelming evidence paints a

5  contrary picture.  Mr. Fu testified and categorically denied ever attacking Mr. Yan, let alone

6  attacking him on April 25, 2016.  Mr. Fu testified that he was asked to go to Mr. Yan's house on

7  the evening of April 25, 2016, but did not go to Mr. Yan's house.  His testimony is corroborated

8  by the testimony of Martin Eng, who testified that he asked Tony Fu to accompany him to Mr.

9  Yan's house on the evening of April 25, 2016, but that Mr. Fu declined and did not go with him to

10  Demas Yan's house that evening.  The undisputed evidence establishes that there were four people

11  present during the alleged attack on Demas Yan and two eye witnesses.  There was Demas Yan,

12  Martin Eng, two assailants and two witnesses driving by, who called 911.  Tony Fu was **not**

13  present, and therefore could not have assaulted Demas Yan.  Mr. Eng testified that not only was

14  Tony Fu not present when Mr. Yan was attacked, but that the attack was carried out by two young

15  Latino or Hispanic youths.  Mr. Eng's testimony is corroborated by the 911 caller, who reported to

16  911 dispatch that two (2) Latino or Hispanic juveniles, aged 16 or 17,  had just attacked an Asian

17  gentleman.

18  Bryant and Tony Fu's testimony established that they were at the property located at 337

19  28th Avenue all evening on April 25, 2016.  Bryant Fu testified that the longest period of time that

20  Tony Fu was not at the property located at 337 28th Avenue on the evening of April 25, 2016 was

21  no more than 10 minutes.  The uncontroverted testimony of Tony Fu, Martin Eng and Bryant Fu

22  all established that it takes anywhere from 20 to 30 minutes to go by car from 337 28th Avenue to

23  Mr. Yan's home on 7th Avenue in San Francisco.  The uncontroverted testimony establishes that

24  between the hours of 6 p.m. and 9 p.m. on April 25, 2016, the longest period of time that Mr. Fu

25  was not inside the property located at 337 28th Avenue was 10 minutes.  Accordingly, it was

26  impossible for Mr. Fu to go from the property located at 337 28th Avenue to Mr. Yan's home on

27  7th Avenue, assault Yan and return to the property at 337 28th Avenue.

28

Post-Trial Brief

-9-

1    Mr. Tucker's description of the event also demonstrates that Yan's testimony is false.    In
2    the 911 audio, Mr. Tucker states "these two young people just punched this Asian guy in the face
3    and then ran off."    "They mugged him and they ran off down 7ᵗʰ Avenue toward forest hill
4    station." Tucker stated the assailants were juveniles, approximately 16 or 17 years old.    Tucker
5    identified the victim as being an Asian male, aged 50 to 60.    Tucker further stated the assailants
6    ran off south toward Forest Hill Station.    Tucker did not say that the assailants ran 50 feet and got
7    into a car and drove away as was stated by Yan.

8        The inconsistencies between 911 statement and Yan's testimony are many: they  include
9    the number of attackers -Tucker says two, Yan says one; the age of the attacker(s) -  Yan says the
10   single attacker was Tony Fu, a middle-aged Asian man, but Tucker says two juveniles attacked
11   Yan, estimated ages 16 or 17, and possibly Hispanic; how the attackers fled the scene -Yan says
12   they ran 50 feet and got into a sedan, both getting in on the driver's side,  while Tucker says they
13   ran off south toward Forest Hill Station, not mentioning the attackers got into a car at all.

14       B.    The 911 Audio Transcript is Admissible Impeachment Evidence

15           i.    The 911 Audio with the Event History Detail from the San Francisco Police
                 Department is Admissible as Both as Public Record and a Business Record.
16

17       The defense has offered a certified audio transcript of the 911 call from the San Francisco
18   Police Department.  The Ninth Circuit has held that 911 calls are admissible as public records and
19   also as business records:

20       Hearsay statements on a 911 tape can be admitted into evidence as either a "public
         record," Fed.R.Evid. 803(8)(B), or a "business record," Fed.R.Evid. 803(6). See
21       *United States v. Sallins*, 993 F.2d 344, 347–48 & n. 4 (3d Cir.1993) (noting that a
         911 tape itself is probably a "public record"); cf. *United States v. Smith*, 521 F.2d
22       957, 964–65 (D.C.Cir.1975) (finding that police radio broadcasts are business
         records). However, because citizens who call 911 are not under any "duty to
23       report," Fed.R.Evid. 803(8)(B), a recorded statement by a citizen must satisfy a
         separate hearsay exception. See Fed.R.Evid. 805; *United States v. Pazsint*, 703 F.2d
24       420, 424–25 (9th Cir.1983) (excluding tapes of emergency calls from witnesses
         reporting defendant's assault of an IRS agent); *Sallins*, 993 F.2d at 347 (excluding
25       911 statement that person matching defendant's description was holding a gun).
         Under certain circumstances, such a statement may qualify as either a "present
26       sense impression," Fed.R.Evid. 803(1), or an "excited utterance," Fed.R.Evid.
         803(2). See *United States v. Mejia–Valez*, 855 F.Supp. 607, 613–14
27       (E.D.N.Y.1994) (admitting under either exception a tape of 911 call made by an
28

Post-Trial Brief                                                    -10-

KORNFIELD | NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600   Oakland, California 94612

eyewitness immediately following a shooting); *United States v. Campbell*, 782 F.Supp. 1258, 1260–61 (N.D.Ill.1991) (admitting under either exception a 911 tape of an eyewitness's description of a gunman). Certainly, a statement by a 911 caller who is witnessing the violent arrest of a suspect by the police could qualify under either exception." *Bernis v. Edwards* 45 F.3d 1369, 1373, 1372 (9th Cir. 1995)

The certified copy of this 911 transcript is admissible as a public record and a business record. Yan's objection that Mr. Tucker's statement is hearsay should be overruled because the third-party witness's statement also meets two hearsay exceptions.

ii. The 911 Audio and Call Log Transcript is Admissible as a Present Sense Impression.

The 911 audio is not hearsay based on Federal Rules of Evidence Rule 803(1), present sense impression, which the rule defines as a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it. *Bernis* says "to qualify under either exception (evaluating both the present sense impression and the excited utterance exceptions to hearsay), an out-of-court statement must be nearly contemporaneous with the incident described and made with little chance for reflection," *Id* at 1373. Further, "the declarant must have personal knowledge of what she describes" *Id.*

The audio statement of Mr. Tucker is a reliable statement that should be admitted under this exception. Mr. Tucker witnessed the attack as it happened and called 911 immediately. There is virtually no lapse in time from his observation of the event to his 911 call; the 911 operator's transcript shows that Tucker's call came in first, minutes before Yan's call or his sister's call. Mr. Tucker does not appear, based on his 911 statements, to know either the victim or the assailants, and therefore can have no bias or ulterior motive in making the call and reporting what he saw; he is seeking police assistance for a crime he witnessed.

iii. The 911 Audio is Also Admissible as an Excited Utterance.

Excited utterances are admissible where the "declarant was so excited or distraught at the moment of the utterance that he did not reflect (or have an opportunity to reflect) on what he was saying." *Boyd v. City of Oakland,* 458 F. Supp 2.d 1015 citing *U.S. v. McLennan* 563 F.2d 943, 948 (9th Cir.1977).* To determine whether a declarant was under the stress of excitement when he made the statement, courts consider not only the lapse of time between the event and the statement

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600   Oakland, California 94612

1   (whether the declarant had time to think about his actions), but also the apparent state of mind of

2   the declarant, the nature of the startling event, and the declarant's age, *Id.* The principle behind the

3   admission of a spontaneous statement is that "under certain external circumstances of physical or

4   mental shock, a stress of nervous excitement may be produced in a spectator which stills the

5   reflective faculties and removes their control, so the utterance which then occurs is ... spontaneous

6   and sincere...." *Id quoting U.S. v. Alarcon–Simi,* 300 F.3d 1172, 1175 (9th Cir. 2002).

7               iv.      Yan Has No Right to Cross Examine the 911 Caller.

8               In objecting to admission of the audio, Yan asserted that he has the right to cross examine

9   the 911 caller on his statements.   Yan is wrong.   When an out of court statement is admissible

10  under a hearsay exception, Yan has no basis to exclude the evidence simply because he cannot

11  cross examine the caller.    Yan asserted no authority for his position, but he may have been

12  referring to the Confrontation Clause of the United States Constitution, which bars the admission

13  of testimonial statements of a witness who did not appear at trial.   Because it is clear from the

14  contents of the audio Mr. Tucker's purpose in making the 911 call is to request police assistance,

15  the call is therefore non-testimonial in nature, and not subject to the confrontation clause. See

16  *Davis v. Washington* 547 U.S. 813 (2006) Additionally, the confrontation clause only applies in

17  criminal matters.   Finally, Demas Yan is not the accused, and therefore not entitled to the right to

18  confront witnesses; Tony Fu is the person standing accused by Yan and as such the one with

19  Confrontation Clause rights, were they to apply to this case.

20              Mr. Tucker's statement was made at the time he witnessed Yan's attack, his responses to

21  the 911 operator's questions were spontaneous and sincere.    Tucker had no relationship to any

22  party involved and no motive to provide false information to the 911 dispatcher.  His statements

23  made in the call therefore provide a reliable description of the events as they happened, and as

24  such, are excepted from hearsay and should be admitted.

25              C.  Yan Presented No Credible Evidence of Damages

26              Yan testified that he sustained injuries from an attack, was taken to San Francisco General

27  Hospital by ambulance, spent the night at the hospital and then had various follow up visits, and

28  consultations  with  medical  practitioners.   However,  Yan's  questionable  testimony  was  not

Post-Trial Brief                                                    -12-

supported by one shred of documentary evidence to establish that he sustained any injuries. There is a complete lack of documentary support for any alleged injuries or the extent of damages suffered by Mr. Yan.

The evidence clearly establishes that Yan, who is a vexatious litigant and disbarred lawyer with a long history of suing and harassing Tony Fu and his family, wanted to frame Mr. Fu. Mr. Eng provided uncontroverted testimony that Yan had asked Eng to fabricate claims against Mr. Fu and had asked for his assistance on the evening of April 25, 2016 in framing Tony Fu. Martin Eng's testimony should be believed because he had absolutely nothing to gain by testifying at trial and a lot to lose, since evidence showed that Yan has been trying to foreclose Eng's property. Further, Mr. Eng's testimony is corroborated by the 911 audio.

## IV.    CONCLUSION

In order for the court to rule in favor of Yan and against Fu, the court must believe Demas Yan, who is not only a vexatious litigant, but a disbarred lawyer who was disbarred for, among other things, attempting to mislead a bankruptcy judge. In order to rule in favor of Yan, this court must ignore the testimony of Tony Fu, Martin Eng, Bryant Fu and the 911 caller. Tony Fu is entitled to a judgment in his favor against Mr. Yan. It is time for Mr. Yan's crusade against Tony Fu to be put to an end.

Respectfully submitted,


Dated: February 22, 2019                    Kornfield, Nyberg, Bendes, Kuhner & Little, P.C.




                                           By: /s/ Eric A. Nyberg
                                              (Bar No. 131105)
                                              Attorneys for Defendant Tony Fu

KORNFIELD | NYBERG, BENDES, KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600 Oakland, California 94612

# DECLARATION OF SERVICE

I, the undersigned, declare:

I am employed in the City of Oakland, County of Alameda, California. I am over the age of 18 years and not a party to this action. My business address is 1970 Broadway, Suite 600, Oakland, California 94612.

I am readily familiar with the business practices of my employer, Kornfield, Nyberg, Bendes, Kuhner & Little, P.C., for the collection and processing of correspondence for mailing with the United States Postal Service and that correspondence is deposited with the United States Postal Service that same day in the ordinary course of business unless indicated below by electronic service.

On February 25, 2019, I served the following documents:

**POST-TRIAL BRIEF OF DEFENDANT TONY FU**

by placing copies of said documents in a sealed envelope by first class mail and served in the manner described below addressed as follows:

<table>
<tr>
<td>

*Via-ECF*
Mark W. Lapham
Law Offices of Mark W. Lapham
751 Diablo Rd.
Danville, CA 94526

</td>
<td>

*Via-ECF and First Class Mail*
Demas Wai Yan
100 Pine Street, #1250
San Francisco, CA 94111

*First Class Mail*
Dennis Yan
Law Office of Dennis Yan
425 Market St. #2200
San Francisco, CA 94105

</td>
</tr>
</table>

I placed such envelopes for collection and mailing at my employer's office following ordinary business practices, addressed to the addressee designated.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of February, 2019 at Oakland, California.

/s/ Gail A. Michael