Entered on Docket
March 20, 2019
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: March 20, 2019

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>TONY DONG XING FU,<br><br>    Debtor. | Case No. 17-41205 CN<br><br>Chapter 7 |
| DEMAS WAI YAN, THAI MING CHIU AND LEGAL RECOVERY, LLC,<br><br>    Plaintiffs,<br>vs.<br><br>TONY FU,<br><br>    Defendant. | Adversary No. 17-4056<br><br>**MEMORANDUM DECISION** |

    This court conducted a trial in this adversary proceeding over the course of three days. All appearances were noted on the record. On January 30, 2019, this court, pursuant to Federal Rule of Civil Procedure 52(c), granted judgment in favor of defendant Tony Fu on plaintiff Thai Ming Chiu's § 727 claims for relief after Chiu rested his case. The remaining claim for relief, held by plaintiff Demas Yan ("Yan") and asserted under Bankruptcy Code § 523(a)(6), was tried to its conclusion. Yan asserts that defendant Tony Fu willfully and maliciously assaulted him on the evening of April 25, 2016. Fu denies the allegation, and argues that he was not present when Yan was attacked. The following constitutes this court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1).

    This memorandum decision requires context. Fu and Yan have engaged in an endless stream of litigation in the Federal and California state courts since 2004, the course of which has been so

broad, undiscerning and repetitive that it has engulfed friends and family members. Bankruptcy Judge Carlson found Yan, then a practicing attorney, to be a vexatious litigant in 2013 (Case No. 12-03129, Docket #28) due to his seriatim filings of meritless adversary proceedings against Fu and his family members, including one such litigation in which Yan's father, Cheuk Tin Yan, served as a plaintiff proxy. Yan was disbarred during the course of this adversary proceeding after the State Bar of California determined that he had committed 27 counts of misconduct. The State Bar found, among other things, that Yan had filed numerous frivolous lawsuits against Fu and his family members. Yan is not the only witness with credibility problems. One of the key witnesses in this case, Martin Eng, a former client of Yan who insists that Yan duped him into executing phony notes and deeds of trust, only to find himself a defendant in a collection action brought by Yan to enforce one of those secured obligations, is himself a vexatious litigant. Simply, three of the four witnesses in this adversary proceeding have substantial axes to grind, and their collective history brings into question their credibility as witnesses.[1] With this background, the court addresses the latest litigation saga between Yan and Fu.

Yan contends that on the evening of April 25, 2016, Fu, in the presence of Martin Eng, violently assaulted him with a blunt instrument, causing him severe head wounds. Both Eng and Fu agree that Fu was assaulted that night. The identity (or identities) of the assailant(s) is the question at hand. Yan contends that Eng and Fu conspired to assault him that evening. Earlier that day, Fu, Yan, and Eng were present in a San Francisco County Superior Court courtroom as Yan obtained an order which authorized his client to enforce a $1.7 million judgment against real property owned by Eng. Fu, who was involved in his own litigation with Yan, attended the hearing as an interested spectator. Fu and Eng were acquaintances who apparently met as a result of their shared activity: being a party to litigation involving Demas Yan. After the hearing, Yan went to the home of his former wife, who lived with Bryant Fu (Tony Fu's college age son) at 337 28th Avenue in San

---

[1] Yan did not voluntarily disclose Judge Carlson's vexatious litigant order to this court. After it came to light, this court held Yan in contempt of court and dismissed all of Yan's claims in this adversary proceeding save his §523(a)(6) claim – the basis of which occurred after the entry of Judge Carlson's order.

Francisco. Fu on occasion stayed at the 28th Avenue house. Fu testified that he spent the bulk of that afternoon and evening preparing for an April 26th court hearing in his own litigation involving Yan. Fu testified that he left the house only once during the evening and that was to meet Eng who had called ahead and driven to the 28th Avenue residence. Eng and Fu met at approximately 7:30 p.m. in Eng's car, which was parked near the 28th Avenue property. During this meeting, which Fu and Eng state lasted only a few minutes, Eng informed Fu that he, at Yan's request, was meeting with Yan at Yan's parents' residence in the Sunset district of San Francisco to discuss settlement, and that Yan instructed Eng to bring Fu with him to the meeting. Eng and Fu both testified that Fu refused the invitation. Fu testified that he thereafter returned to the 28th Avenue residence.

Bryant Fu corroborated his father's testimony regarding his whereabouts that evening. Bryant Fu was working on a college class paper that evening in the dining room of the 28th Avenue residence. He testified that his father was in the 28th Avenue residence throughout the evening, with the exception of a five-to-ten minute break when his father left the house to go for a walk.

Yan's parents reside at 1433 7th Avenue in San Francisco. No one disputes that it takes far more than fifteen minutes to drive from 337 28th Avenue to 1433 7th Avenue and back (which time line does not include the assault).

Yan was assaulted at approximately 8:30 pm that evening on the sidewalk outside his parents' residence. Yan testified that he was taking the garbage out to the curb when he saw Eng approach him. While he was facing Eng, Yan testified that he was struck on the back of his head and that when he turned around to face his assailant, he saw Fu with a blunt instrument, who then struck him several more times. Yan does not recall having any substantive conversation with either Eng or Fu. Yan testified that after the assault, Fu and Eng ran to a nearby car and drove away. Yan testified that he then returned to his parents' residence and called the police. Yan's sister (who was also at their parents' residence) separately called 911 to request an ambulance. Yan testified that he was taken to San Francisco General Hospital and treated for significant head trauma.

Eng tells a different story. Eng testified that he drove to the 7th Avenue residence alone and met with Yan on the sidewalk outside the residence. Eng stated that Yan attempted to solicit his help in framing Fu, and informed Eng that he had bribed a San Francisco police officer for this

3

**MEMORANDUM DECISION**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

purpose. Eng testified that during this conversation, two Hispanic teenagers appeared and assaulted Yan, at which time Eng ran away to avoid any confrontation.[2]

Yan's assault was witnessed by Thomas Tucker, who was in a car traveling on 7th Avenue. Tucker called 911 at 8:36 p.m., and informed the 911 operator that he saw "two young people" assault an middle-aged Asian male on 7th Avenue. When the operator asked Tucker if he observed the attackers' race, Tucker initially responded that they were Hispanic, but then clarified that both assailants were "juveniles" and that he "couldn't really tell their race."[3]

Fu and Eng were both arrested by the San Francisco police department for allegedly assaulting Yan; while the status of the claims against Eng are unclear, the San Francisco District

---

[2] Eng also testified that 1) Yan informed him that he had hired a hitman to take out Fu, and 2) the alleged bloodstain on Eng's sports jacket (the source of which was allegedly Yan) resulted from a fight the two had in San Francisco County Superior Court. Neither statement was corroborated and they are not relevant to the merits of this action. They do indicate, however, Eng's animosity towards Yan. This court also had some difficulty understanding Eng's testimony regarding the juxtaposition of Eng, Yang and the alleged Latino assailants that night on Seventh Avenue.

[3] Yan's hearsay objection to the 911 audio is overruled. Hearsay statements on a 911 tape may be admitted into evidence as either a "public record" or a "business record." *Bemis v. Edwards,* 45 F.3d 1369, 1372 (9th Cir. 1995), citing FRE 803(8) and FRE 803(6). However, since citizens who call 911 are not under any "duty to report," a recorded statement by a citizen must satisfy a separate hearsay exception. *Ibid.* 911 calls sometimes qualify as a "present sense impression" or an "excited utterance." *Bemis, supra,* at 1372, citing FRE 803 (1) and (2). A present sense impression is a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it. FRE 803 (1). An excited utterance is a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. FRE 803(2). Under either exception, the declarant must have personal knowledge of his or her statement. *Bemis, supra* at 1373. A present sense impression must be "nearly contemporaneous with the incident described and made with little chance for reflection." *Id.* at 1372. For a statement to qualify as a present sense impression, "courts consistently require substantial contemporaneity." *Torres v. City of Santa Clara,* 2014 U.S. Dist. LEXIS 116195 (N.D. Cal. 2014), n. 20, citing *United States v. Shoup*, 476 F.3d 38, 42 (1st Cir. 2007). The records of San Francisco's Department of Emergency Management indicate that Tucker called 911 at 8:36 p.m. on April 25, 2016. Ng and Yan both testified that Yan was assaulted between 8:00 and 9:00 p.m., and it appears that Tucker called shortly after Yan was assaulted. Accordingly, the content of Tucker's 911 call was a substantially contemporaneous present sense impression under FRE 803 (1).

Yan's objection that Tucker's 911 statements violated his Sixth Amendment rights is also overruled. Yan's right to confront a witness under the Sixth Amendment does not apply in a civil proceeding. *Austin v. United States*, 509 U.S. 602, 608 (1993).

4

**MEMORANDUM DECISION**

Attorney's office ultimately dismissed the charges against Fu.  Yan spent much of his time at trial dissecting Fu and Eng's alleged criminal defense strategy, including the timing of Bryant Fu's submission of his written alibi to the District Attorney's office.  This evidence was of little value, since Fu has consistently denied any involvement, his son's testimony has not changed, and the pace and conduct of a criminal prosecution differ vastly from those of a civil adversary proceeding.

Yan has not established by a preponderance of the evidence that Fu willfully and maliciously assaulted him on April 25, 2016. Under Bankruptcy Code §523(a)(6), an individual debtor may not discharge a debt resulting from a willful and malicious injury to another entity or to the property of another entity.  An injury is 'willful' if the debtor had a subjective motive to inflict the injury or believed that injury was substantially certain to occur as a result of his conduct.  *In re Jercich*, 238 F.3d 1202, 1208 (9th Cir. 2001).  A 'malicious' injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.  *Jercich, supra* at 1209.  Yan must satisfy these elements by a preponderance of the evidence.  *Grogan v. Garner,* 498 U.S. 279, 291 (1991).  This evidentiary standard requires a plaintiff to establish that each element of its claim "more likely than not" exists. *In re Blaskey*, 2015 Bankr. LEXIS 627, *11 (Bankr. 9th Cir. 2015), citing *Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 699-701 (9th Cir. 2007).  Yan has not met this standard, since he has not established by a preponderance of the evidence that Fu attacked him.  While this court does not dispute that Yan was assaulted that evening, the only party who identified Fu as the assailant is Yan himself.  For the reasons stated above, Yan has little credibility with this court, particularly when Tony Fu is the topic of the conversation.  In addition, Fu and Eng both testified that Fu was not there, and Bryant Fu testified that his father - save for his short walk - remained at the 28th Avenue residence during the night of April 25th.  While Eng's description of the scene that night was, at times, difficult to follow, and his testimony regarding the bribe, the hitman, and his allegedly bloodstained sports jacket raised eyebrows, he is no less credible that Yan.  Thus, the cumulative weight of Yan, Eng and the Fus' testimony demonstrates that Yan has not met his burden of proof.  Moreover, the 911 call by Tucker - who is a disinterested party - does not support Yan's contention.  Tucker witnessed the attack, and he, at the very least, identified two teenagers as the attackers, not two middle aged men such as Fu

5

**MEMORANDUM DECISION**
Case: 17-04056    Doc# 174    Filed: 03/20/19    Entered: 03/20/19 17:29:43    Page 5 of 7

and Eng. While Tucker was uncertain regarding their ethnicity, he was confident that they were "juveniles" and not two men past fifty years old. Yan did not depose Tucker or provide this court with any other credible evidence that supported his identification of Fu as the assailant.

Accordingly, this court will enter judgment in favor of Fu. Fu's counsel shall submit an appropriate judgment.

*** END OF ORDER ***

**COURT SERVICE LIST**

Marlene G. Weinstein
Chapter 7 Trustee
1511 Sycamore Ave. #M-259
Hercules, CA 94547

Office of the U.S. Trustee/Oak
Office of the United States Trustee
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102

Other recipients are ECF participant