DEMAS YAN
100 Pine St #1250
San Francisco, CA 94111
Phone (415) 867-5797
Plaintiff in Pro Se

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| In re: Tony Fu,<br><br>        Debtor.<br>_____<br>Thai Ming Chiu, Demas Yan,<br>        Plaintiffs,<br>v.<br>Tony Fu,<br>        Defendant. | Bankruptcy Case No.: 17-41205 CN<br><br>AP # 17-04056<br><br>FIRST AMENDED MOTION FOR NEW TRIAL OR ALTERNATIVELY FOR AMENDMENT OF JUDGMENT [Fed. R. Bankr. P. 9023]<br><br>Date: 6/3/2019<br>Time: 10 am<br>Judge: Charles Novak<br>Ctrm: 215<br>Trial: January 8-9, 29-30, 2019 |

Plaintiff DEMAS YAN hereby motion for a new trial or alternatively for amendment of judgment entered on March 28, 2019. The basis for motion is manifest error of fact and discovery of perjured testimony of crucial defense witness.

JURISDICTION TO GRANT NEW TRIAL OR AMEND JUDGMENT

Rule 9023 provides that a motion for new trial or amendment of judgment shall be filed no later than 14 days after entry of judgment. An amended motion is timely if original motion for new trial was timely filed. Roy v. Volkswagenwerk Aktiengesellschaft, 781 F.2d 670 (9th Cir.1985, Per Curium), citing Pogue v. International Industries, Inc., 524 F.2d 342 (6th Cir.1975).

Rule 59 of Federal Rule of Civil Procedure make applicable by Rule 9023 of Federal Rule of Bankruptcy Procedure permits a party to seek amendment of a judgment or a new trial. A court may grant a new trial after a bench trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." [Rule 59(a)(1)(B).] After a nonjury trial, a court may also "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." [Rule 59(a)(2).] The court "on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion." [Rule 59(d).] A court may alter or amend a judgment. [Rule 59(e).]

The authority to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980). Rule 59(a) does not specify the grounds on which a motion for a new trial may be granted. Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir.2003)). Rather, the court is "bound by those grounds that have been historically recognized." Id. Trial court may grant a new trial "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Id. (quoting Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n.15 (9th Cir. 2000)). In undertaking this review, the court need not view the evidence from the perspective most favorable to the prevailing party. Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987).

Courts in the Ninth Circuit and other circuits have granted new trials when a material witness is discovered to have provided perjured testimony. The standard for

granting new trial based on false testimony is set forth in Davis v. Jellico Community Hospital, Inc.,912 F.2d 129, 133 (6th Cir.1990): "A new trial should be granted where the court is reasonably well satisfied that the testimony given by a material witness is false; that without it, a jury might have reached a different conclusion; that the party seeking a new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial."  In Stamps v. United States, 406 F2d 925 (9th Cir. 1969), the court found that where conviction rested on credibility of a federal narcotics agent and serious question was presented to trial court as to whether agent had perjured himself in trial testimony, the trial court should conduct a plenary hearing to determine how pervasive was that perjury.  The court stated that "One must hear before one decides. *Audi alteram partem* is a fundamental rule of procedural fairness."  In a nonjury case in Phillips v. Crown Cent. Petroleum Corp., 556 F2d 702 (4th Cir. 1977), the court held that where it has been shown after trial that a crucial witness had committed perjury, the trial court committed reversible error in continuing to credit witness's testimony without inquiring into extent of perjury and granting new trial or other relief.

Grounds for granting new trials under Rule 59(a)(1)(B) are "(1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence." Brown v. Wright, 588 F.2d 708, 710 (9th Cir. 1978).  Under Rule 59(e), the Ninth Circuit has identified four non-exclusive reasons to grant a motion to alter or amend a judgment, "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011) (citation omitted).

## PROCEDURAL BACKGROUND

On 03/28/2019, the Court entered Judgment on the Complaint (Doc.# 179). The judgment was in favor of defendant Tony Fu and against plaintiff Demas Yan on the claim under Bankruptcy Code § 523(a)(6). The Amended Memorandum Decision (Doc.# 177) was entered on 03/27/2019.

## ERROR OF FACT

On January 30, 2019, the audio recording of Thomas Tucker's 911 phone call (Defendant's trial exhibit W) was played at trial. In the audio recording, Mr. Tucker clearly stated that as to the age of the two attackers that he saw, "I couldn't really tell their age." Yet the Court in its Decision stated that Mr. Tucker, "who is a disinterested party – does not support Yan's contention" that the attacker was Tony Fu who is a middle-aged man and that he "identified two teenagers as the attackers." But Mr.Tucker did not identified two teenagers as the attackers. Mr. Tucker specifically said that he cannot tell the age of the attackers. Tucker was honest in clarifying that he was not sure of their age after initially guessing at their age at the urging of the 911 operator to make a guess.

The court's finding that Mr. Tucker did not support Yan's contention is tantamount to a finding that Yan is not credible because his testimony is contradicted by a disinterested person, but as clearly shown by the audio recording, the Court was in error when it stated that Mr. Tucker identified the attackers as teenagers. The Court's error in fact necessarily affected the Court's assessment of Yan's credibility. But not only that Mr. Tucker did not contradict Yan's testimony as the Court incorrectly stated, Mr. Tucker actually corroborated Yan's narrative of the attack. Mr. Tucker stated that he saw the victim on the sidewalk with two other persons and that

they ran away from the victim in the southerly direction on Seventh Avenue in San Francisco. Mr. Tucker at the time as traveling north in a moving vehicle. Mr. Tucker's statement supports Yan's testimony at trial and contemporaneous given to law and emergency respondents shortly after the attack that he was on the sidewalk with two other persons, Tony Fu and Martin Eng, and that they fled by running south to a parked car. Martin Eng's testimony was that he was on the sidewalk with Yan when two attackers suddenly appeared out of nowhere. If Eng's testimony is true, then Mr. Tucker would have stated that he saw three other persons besides the victim instead of two.

## PERJURED TESTIMONY

Bryant Fu, son of defendant Tony Fu, is a crucial defense witness. He wrote the alibi statement around April 4, 2017 (Plaintiff 's Exh. No 10), almost one year after the attack on April 25, 2016, claiming that Tony Fu could not have been the attacker because he was with him the whole evening at 337 28th Avenue in San Francisco. Tony Fu forwarded the alibi statement to the prosecutor on the eve of his trial and the District Attorney interviewed Bryant and shortly thereafter dismissed the criminal charges against Tony Fu.

Bryant wrote in the alibi statement that "[t]he dining room and my chair face the only available entrances and exits for my father's room. Therefore, I would know if my father moved in or out of the house." and "[t]he fact is, my father was with me at my house the entire night, and I am absolutely confident in testifying to this fact because he would never be out of reach for more than 5-10 minutes at a time." Bryant did not write in the alibi statement that he saw Tony Fu go out of the house and came back again. Therefore it was a surprise to Yan that Bryant's trial testimony appears to differ from his written alibi statement.

Bryant's testified at trial on January 9, 2019. When Yan asked Bryant as to whether his trial testimony was consistent with his statements at the interview with the District Attorney, Bryant's answer was an unequivocal "Yes." Since Yan was not privy to Bryant's interview with the District Attorney, Yan did not know at the time that Bryant's answer was false. A transcript of Bryant's interview with the District Attorney was obtained after trial and is appended as Exhibit A to Yan's Supporting Declaration. The transcript shows that Bryant's answer of "Yes" as to whether his trial testimony was consistent with his statements at the interview with the District Attorney is perjured. It is a material falsehood because inconsistent statements on material issues are hallmarks of fabrication and deceit. Bryant's trial testimony is not consistent with his statements at the interview not only as to Tony Fu's movements on the evening of April 25, 2016 but also on other material issues.

At trial, Bryant testified that he was aware of Tony Fu's movements because he was "situated at the dining room" which "faces the only available exits" that Tony Fu can take. Bryant testified that he saw Tony Fu went out and back into the house between 7 pm to 8 pm. When questioned as to whether his view of the exit was blocked, Bryant testified that "it's blocked by a -- just by a beam, a center beam, but that's it. I can see the window that is right next to the -- to the front door." Bryant testified that "I can't see the entire front door," but when asked whether he was "absolutely sure" that he saw Tony "went outside the front door", Bryant testified that "Yes, to my -- to my recollection, yes, because he passed by the place I was -- I was sitting, and I could see him." The Court posed a follow-up question to Bryant, "Okay. That's the question. Did you see him go out at least once that night, or did you not see him go out -- or did you see him go out that door on that night?" Bryant's answer was an unequivocal "Yes. I saw him go out." But Bryant's statements at his interview with the District Attorney is entirely different.

At the interview, Bryant stated that he was "absolutely certain" that Tony Fu was with him the entire time on "April 25th, 2016 around 5:00 p.m. in the evening to 8:00 a.m. the next day." [Transcript Exh. A at p. 10.]  That he was certain of that because he can see both ways to get into the home and that if someone were to go out either one of these entrances, he would see them leave. [Exh. A at p. 24.]  Bryant stated that he was sure Tony Fu did not exit the house because there was nothing obstructing his view of the exit, that there is just a goldfish tank against the wall next to the exit door which does not obstruct his view of anyone exiting.  [Exh. A at 26-27.]  Bryant emphatically stated that "I was very sure my dad was with me from 5:00 to 8:00." [Exh. A at 39.]  Later in the interview, when asked, "your belief was that your father was there from 5:00 o'clock until midnight which is when you went to bed?", Bryant again emphasized that Tony Fu never left the house by stating, "Yeah, I'm pretty sure that -- well, he went to asleep at that time as well, so I'm pretty sure about the fact that he wouldn't walk out of the house before you have something that you had to wake up in the morning to get to in court. So it's fair to say that he was with me between the time that I was -- that I fell asleep and until the next morning around 8:00." [Exh. A at 58.]

Bryant's testimony at trial is completely at odds with his statements at the interview with the District Attorney.  At trial his testimony was that even though his view of the exit was blocked by a beam, he was absolutely sure he saw Tony Fu exit the entrance once between 7 pm to 8 pm, but at the interview with the District Attorney, Bryant stated that there was nothing blocking his view of the exit and that he was absolutely sure Tony Fu was with him the entire evening beginning at 5 pm.

There are other material inconsistencies in Bryant's testimony.  At trial, Bryant testified that on April 25, 2016, he was working on a final assignment for a class know as "International Securities" and that the class was taken in the Winter Quarter which ended on March 17, 2016.  The end of the class predates the date of the attack on April

25, 2016.  When asked when the assignment was due, Bryant testified that he does not remember when the assignment was due.  When asked "Was it due sometime in May 2016?", Bryant testified, "I don't -- no, it was not. Sorry, to the best of my recall, I -- it's been over two years; I can't remember. I can't remember. It -- it may have. I don't think it would be, but I don't remember. It was -- it was sometime after April 25th. I believe it was soon after April 25th, but I can't remember at this point."  But at the interview with the District Attorney, Bryant stated that "I just remember the due date of the assignment. That's all my concern was. It's like due date. All right. Schedule, work, hopefully before it's due." In response to the question as to what was the due date, Bryant stated that "It was May 9th of 2016." In response to the question, "All right. And what was the last day of that class?" Bryant's statement is, "I can't remember. I'd have to look that up. I'm sorry." [Exh. A at 45.]  Bryant's testimony concerning his class schedule and assignment is material because if his story is inconsistent, it is indication that he was not doing what he was claiming on the night of April 25, 2016 or that it was not April 25, 2016 when he was working on his class assignment.

## NEW TRIAL IS NECESSARY

Tony Fu testified that he asked Bryant Fu to write the alibi statement.  Tony Fu passed the alibi statement as true.  If the alibi is fabricated as it appears to be, then Tony Fu and Bryant Fu are equally responsible and liable for perjury.

Comparing Bryant's trial testimony with his statements he gave at his interview with the District Attorney, it is indisputable that the inconsistencies cannot be the result of mere forgetfulness or lapse of memory.   Where there is proof of perjury or indication of perjury, the Court should not let the person committing or procuring perjured get off with a free pass.  The Court has the inherent authority on its own motion or upon motion of an aggrieved party to order new trial or reopen trial to take additional testimony and

evidence, then re-appraise the case and determine the appropriate findings and conclusions.  Respectfully the Court should grant this motion for new trial.

Dated: 4/19/2019
/s/DEMAS YAN